*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee

**v.**

### Robert L. HONEA III, Captain
United States Air Force, Appellant

### No. 17-0347
Crim. App. No. 38905

Argued December 6, 2017—Decided February 1, 2018

Military Judges: Lynn Watkins (arraignment and motions) and Shaun S. Speranza (court-martial)

For Appellant: *Brian L. Mizer*, Esq. (argued); *Captain Patricia Encarnación Miranda* (on brief); *Major Johnathan D. Legg* and *Major Lauren A. Shure.*

For Appellee: *Captain Tyler B. Musselman* (argued); *Colonel Katherine E. Oler and Major Mary Ellen Payne* (on brief); *Major Meredith L. Steer.*

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, Judges RYAN and SPARKS, and Senior Judge EFFRON, joined.

———————————

Judge OHLSON delivered the opinion of the Court.

Contrary to Appellant's plea, a military judge sitting as a general court-martial convicted Appellant of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2006). He then sentenced Appellant to confinement for one month and dismissal from the service. The convening authority approved this sentence. Upon appellate review, the United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and sentence.

We granted review of the following issues:

    I. Immediately before the defense rested its case, the military judge invited the parties' attention to R.C.M. 910, and directed the defense to provide the military judge with a draft specification of assault consummated

by a battery. Did the lower court err when it held that the defense's compliance with the military judge's directive constituted a de facto defense request to modify the specification pursuant to R.C.M. 603 where there is no evidence that either the defense or the convening authority were aware the charge was being amended pursuant to R.C.M. 603?

II. The military judge dismissed Specification 2 of Charge II, abusive sexual contact by causing bodily harm, for failure to state an offense, but she allowed the Government to proceed to trial on the purported lesser included offense of assault consummated by a battery. Did the military judge err?

We conclude that we cannot conduct a proper review of this case under Article 67, UCMJ, 10 U.S.C. § 867 (2012), because the record fails to adequately demonstrate the charge of which Appellant was convicted. Accordingly, we reverse the CCA's decision affirming Appellant's conviction. The charge and specification are set aside and dismissed.

## I. Background

The tortuous procedural facts of this case are as follows. In May of 2014, the Government preferred the following Article 120, UCMJ, 10 U.S.C. § 920 (2006), abusive sexual contact offense against Appellant:

In that CAPTAIN ROBERT L. HONEA III, United States Air Force, 1st Air Force, Tyndall Air Force Base, Florida, did, at or near Dover Air Force Base, Delaware, between on or about 1 February 2011 and on or about 30 April 2011, engage in sexual contact, to wit: touching [RSV's] *vulva* with his penis, by causing bodily harm upon her, to wit: touching [RSV's] *vulva* with his penis.

(Emphasis added.)[1]

During the subsequent Article 32, UCMJ, 10 U.S.C. § 832 (2012), hearing, RSV testified that she "was awoken by [Appellant] thrusting his penis against her *pubic area.*"

---

[1] The Government also preferred additional charges and specifications against Appellant that are not relevant to this appeal.

(Emphasis added.) Based on RSV's testimony, the investigating officer recommended that "either: (1) the specification be changed by replacing the word 'vulva' with a broader description of the anatomical area, or (2) that the specification not be referred to trial." The Staff Judge Advocate then recommended to the convening authority that the specification be modified to read "pelvic region" rather than "vulva." The convening authority agreed with this recommendation. The Government then made a pen and ink change to the specification by replacing the first reference to "vulva" with the term "pelvic region." However, the Government did not change the second reference to "vulva." Thus, the amended Article 120, UCMJ, specification read as follows:

> In that CAPTAIN ROBERT L. HONEA III, United States Air Force, 1st Air Force, Tyndall Air Force Base, Florida, did, at or near Dover Air Force Base, Delaware, between on or about 1 February 2011 and on or about 30 April 2011, engage in sexual contact, to wit: touching [RSV's] *pelvic region* with his penis, by causing bodily harm upon her, to wit: touching [RSV's] *vulva* with his penis.

(Emphasis added.) The charge was then referred to general court-martial.

Prior to trial, defense counsel filed a motion to dismiss the specification on two alternative grounds: (1) the specification failed to state an offense; and (2) the replacement of "vulva" with "pelvic region" constituted a major change to the specification. The military judge agreed with trial defense counsel that the specification did not state an offense. In a written ruling, the military judge outlined her reasoning as follows:

> The first element of [the] offense requires sexual contact…. "[S]exual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person…." These terms are very specific in nature. The term "pelvic region" is not included in that definition and is a generalized area of anatomy and is ambiguous …. This presents a notice issue to the Accused as the defense must be placed on notice as to where the alleged sexual contact occurred. The term "pelvic region" [is] too

ambiguous and therefore the offenses fail to allege sexual contact.[2]

(Second ellipsis in original.)

Instead of dismissing the charge and specification, however, the military judge found that assault consummated by a battery is a lesser included offense (LIO) of abusive sexual contact.[3] She then ruled that the court-martial could go forward on the LIO of assault consummated by a battery, but stated that "although the term 'pelvic region' still exists, it is narrowed down to touching of the 'vulva.'" The Government did not make any amendments to the charge sheet after the military judge's ruling. Subsequently, before a different military judge, Appellant pleaded not guilty to the LIO of assault consummated by a battery.

Shortly before the end of the defense's findings case, the second military judge announced that he had "advised the parties to refer to Rule for Courts-Martial [(R.C.M.)] 910 with respect to [Appellant's] plea to a lesser included offense of assault consummated by a battery," and that the defense counsel had provided a draft specification for the LIO. The Discussion section of R.C.M. 910(a)(1) states: "When the plea is to a lesser included offense without the use of exceptions and substitutions, the defense counsel should provide a written revised specification accurately reflecting the plea." However, it is clear from the context of this provision that it applies to an accused's entry of a *guilty* plea to a lesser included offense. When an accused pleads *not* guilty to an offense, it is the Government's responsibility to identify the charges against the accused. *See* Article 30, UCMJ, 10 U.S.C. § 830 (2012).

The draft specification provided by defense counsel read:

In that CAPTAIN ROBERT L. HONEA III, United States Air Force, 1st Air Force, Tyndall Air Force

---

[2] The military judge ruled that because the original specification failed to state an offense, the issue of whether the pen and ink change to the specification was a major change was moot.

[3] Because we do not reach the substantive merits of this case, we do not address the issue of whether assault consummated by a battery actually is an LIO of abusive sexual contact.

> Base, Florida, did, at or near Dover Air Force Base, Delaware, between on or about 1 February 2011 and on or about 30 April 2011, *unlawfully touch [RSV] on the pelvic region with his penis.*

(Emphasis added.) The Government then agreed with the military judge that "that's what the lesser included offense specification would look like, or is." However, Appellant never entered a plea to this modified specification. Nevertheless, the military judge found Appellant not guilty of the charged Article 120, UCMJ, offense, but guilty "[o]f the lesser included offense of Specification 2 of Charge II, assault consummated by a battery." The military judge made no reference to the terms "vulva" or "pelvic region," and he did not use any exceptions or substitutions to implement the draft specification.

Despite the fact that the LIO drafted by defense counsel stated that Appellant "did … unlawfully touch [RSV] on the *pelvic region* with his penis," the promulgating order signed by the convening authority listed the specification as follows:

> Did, at or near Dove [sic] Air Force Base, Delaware, on or about 1 February 2011 and on about 30 April 2011, engage in sexual contact, to wit: touching [RSV's] *pelvic region* with his penis, by causing bodily harm upon her, to wit: touching [RSV's] *vulva* with his penis. Plea: NG to the LIO of assault consummated by a battery. Finding: G of the remaining LIO of assault consummated by battery in violation of Art 128, UCMJ (greater Art 120 offense dismissed by Military Judge after defense motion for failure to state an offense.)

(Emphasis added.)

Upon appeal to the CCA, Government appellate counsel initially argued in their briefs that Appellant had been found guilty of touching RSV's *vulva*. However, mere days before oral argument, Government appellate counsel changed course and argued that the draft specification "only required the United States to prove contact between the Appellant's penis and the victim's '*pelvic region*'" and that "was

what the military judge used to determine Appellant's guilt."[4] (Emphasis added.)

## II. Analysis

The mere recitation of these convoluted procedural facts is sufficient to demonstrate the fundamental—and ultimately fatal—flaw with this case. Namely, the record fails to definitively identify what offense Appellant was convicted of. To be sure, there are a number of various possibilities as reflected in the charge sheet, the first military judge's comment about the putative LIO, Appellant's not guilty plea to an unspecified LIO, the defense-drafted LIO, the second military judge's verdict, and the promulgating order. However, this multitude of options simply serves to prove the point that there is no conclusive answer. As Government appellate counsel admirably and appropriately conceded during oral argument before this Court, this case is "a mess."[5]

Indeed, the record before us is such a tangled morass that we are precluded from conducting an appropriate Article 67, UCMJ, review of this case. This Court is authorized to "act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals." Article 67(c), UCMJ. Due to the Government's actions—which were exacerbated by the military judges' decisions—the record does not establish with certainty what the findings were in this case. As a consequence, Appellant's conviction must be reversed. In addition, in regard to whether this Court should authorize a rehearing, we note the following two points.

---

[4] The Government appeared to concede at trial that the facts were not sufficient to demonstrate that Appellant touched RSV's vulva. Specifically, in closing argument trial counsel stated that RSV "woke up on her side, he[r] legs together, the accused trying to manage himself, trying to manage her, couldn't figure out a way to get her legs separated to get to her vulva, but, it certainly wasn't for lack of trying."

[5] We wish to note that it is always commendable and constructive to have appellate counsel concede the obvious in briefs and at oral argument.

First, it is impossible to discern from the record before us whether a material variance occurred between the pleadings and proof in this case. *See United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003) ("A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge." (internal quotation marks omitted) (quoting *United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999)). This Court cannot authorize a rehearing on a charge or specification where a "material variance deprives an accused of the fundamental right to due process." *Id.* at 67 (dismissing charge where material variance prejudiced accused by changing "the very nature of the offense in issue" and limited "accused's ability to defend against the charge against him").

Second, the inability to discern what offense Appellant was convicted of prevents this Court from determining which variation of the specification should be analyzed in determining whether Appellant's conviction was an LIO of Article 120, UCMJ. When an appellant's conviction is not an LIO of the greater charged offense, this Court has repeatedly declined to authorize a rehearing. *See United States v. Girouard*, 70 M.J. 5, 10–12 (C.A.A.F. 2011) (setting aside and dismissing conviction of negligent homicide when it was not an LIO of the charged offense); *United States v. McMurrin*, 70 M.J. 15, 18–20 (C.A.A.F. 2011) (affirming decision of the CCA to set aside and dismiss a conviction of an offense that was not an LIO of the greater offense); *United States v. Miller*, 67 M.J. 385, 389 (C.A.A.F. 2009) (reversing where the CCA was not authorized to affirm a finding of guilt to an offense that was not an LIO of the greater offense).[6]

As can be seen, the record before us is so irredeemably muddled that it is impossible to ensure that these constitutional rights of Appellant were observed at trial. Accordingly, based on the particular and peculiar circumstances of

---

[6] We further note that Appellant's due process right to receive proper and timely notice of the offense he was defending against, as well as his right to know the offense of which he was convicted, were implicated.

this case, we not only reverse Appellant's conviction, we also decline to authorize a rehearing.

## III. Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings and sentence are set aside and the charge and specification are dismissed with prejudice.